UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CENGIZ TASCI,**<br><br>Plaintiff,<br><br>v.<br><br>**JOHN TSOUKARIS, FIELD OFFICER DIRECTOR FOR THE OFFICE OF ENFORECEMENT AND REMOVAL OPERATIONS, NEWARK FIELD OFFICE,**<br><br>Defendant. | Civ. No. 13-2438 (KM)<br><br>**MEMORANDUM OPINION** |

This matter comes before the Court upon the Verified Petition for Writ of Habeas Corpus and Complaint for Injunctive Relief staying the Order of Removal from the United States of Petitioner Cengiz Tasci ("Tasci"). Petitioner maintains that he is not challenging the validity of the removal order itself or even the discretionary decision denying his request for a stay of his removal from the United States. Rather, Tasci maintains that he is challenging the Government's failure to apply internal policy guidelines in reaching its determination that Tasci should be removed. Whether this Court has jurisdiction to hear Petitioner's habeas challenge is a threshold issue. For the reasons set forth below, I hold that, under Section 1252(g) of the Immigration and Nationality Act ("INA"), this Court lacks jurisdiction to review Petitioner's claims.

1

## I. BACKGROUND

Mr. Tasci, a 43 year-old citizen of Turkey, has been residing in the United States since 2001. *See* Brief in Support of Petition for Habeas Corpus, April 25, 2013, ECF No. 6 ("Tasci Brief"). He has a six-year-old daughter with his estranged wife, Theresa Godlove, who is a U.S. citizen, and he is awaiting the birth of a second child with his current girlfriend. *Id.* at 2. Tasci is currently detained at Essex County Correctional Facility in Newark, New Jersey. *Id.* at 1.

The facts regarding Tasci's immigration history are most clearly set forth in a letter from the U.S. Immigration and Customs Enforcement ("USICE" or "ICE") denying Tasci's application for an administrative Stay of Removal. *See* Letter of John Tsoukaris, USCIS Field Office Director, Regarding I-246 Denial, April 12, 2013, ECF No. 1-3 ("I-246 Denial"). According to the 1-246 Denial, Tasci was admitted to the United States on May 30, 2001, as a non-immigrant B2 Visitor for Pleasure with authorization to remain in the United States for a period of six months. *Id.* Tasci was "encountered on October 3, 2003 in Detroit, Michigan, by the U.S. Border Patrol and was taken into custody." *Id.* Tasci posted bail and was released, but thereafter failed to appear at his scheduled immigration hearing and was ordered removed to Turkey. *Id.* In March, 2005, Tasci filed a Motion to Reopen with the Executive Office for Immigration Reform (EOIR) which was denied on April 14, 2005. *Id.* On October, 2005, a "Petition for Alien Relative" (I-130) was filed on behalf of Tasci by his wife, Ms. Godlove, with U.S. Citizenship and Immigration Services

2

("CIS"), but she subsequently withdrew that petition and it was later denied by CIS on April 16, 2007. *Id.* Tasci was encountered by ICE officials on January 22, 2013 and taken into custody. *Id.* While in custody, Tasci filed a VAWA petition[1] which is currently pending. *Id.* He also filed a second Motion to Reopen with the EOIR which was denied on March 4, 2013. *Id.* Tasci has filed an appeal with the BIA which also remains pending. *Id.* On March 27, 2013, ICE officials attempted to deport Tasci, but he refused to board the plane. *Id.*

Tasci does not challenge the facts as set forth in the I-246 Denial, but he offers a different interpretation of those facts and submits additional facts. First, Tasci maintains that the order of removal was issued *in absentia* because he never received notice of his initial hearing and his attempts to reopen the order have been denied as time-barred.[2] Tasci Brief at 1-2. Second, before ICE

---

[1] In order to be eligible to file an I-360 Self-Petition pursuant to the Violence Against Women Act ("VAWA"), Mr. Tasci must have a spouse, parent or step-parent who is a U.S. Citizen (USC) or Lawful Permanent Resident (LPR) who has abused him physically, sexually or psychologically. *See* *http://www.immigrationdirect.com/immigration-articles/violence-against-women-act/index.html?r=cse-organic-none-VAWA%20*. The basis for Mr. Tasci's I-360 Self-Petition appears to be an incident involving his estranged wife, Theresa Godlove, in which she allegedly stabbed him in the arm with a knife. Mr. Tasci has not presented evidence of any other domestic violence incidents other than quoting allegations apparently made by a former spouse of Ms. Godlove's in a 1994 custody suit alleging that she "has become irresponsible and has endangered the minor child's life by subjecting him to her fits of rage, including but not limited to, excessive consumption of alcoholic beverages and the carrying and use of loaded weapons." Tasci's Response to Notice to Alien of File Custody Review, ECF No. 1-4 ("File Review Response") at 5-6. However, Mr. Tasci's submission for his File Review contains court paperwork stating that Ms. Godlove filed a domestic violence complaint against Mr. Tasci on January 15, 2013 in the Superior Court of New Jersey, Burlington County, and received a temporary restraining order and order for payment of child support. *See id.* at 51-59.

[2] Tasci admits that, while in custody in Detroit in 2003, he was personally served with a Notice to Appear dated October 8, 2003, stating that he would be required to appear on October 10, 2003. *See* File Review Response at 43 ("Notice of Appeal from a

attempted to remove Tasci, he received a "Notice to Alien of File Custody Review" on March 5, 2013. *See* Ex. A to Tasci Brief. Tasci does not explain the procedural significance of this Notice,[3] but the Notice itself states that the purpose of the Review is to determine whether individuals who are detained and subject to a final order of removal may be released on an "Order of Supervision" if their removal is not executed within a certain time frame. *See id.* The Notice provides that release "is dependent on [the alien's] demonstrating to the satisfaction of the Attorney General that [he] WILL NOT pose a danger to the community and WILL NOT present a flight risk." *Id.* The Notice indicates that ICE *may* consider, but is not limited to, ten listed factors including criminal history, failures to appear, and "equities" in the United States. *See id.* The Notice states that Tasci's File Review will take place "on or about April 1, 2013." ICE, however, attempted to execute Tasci's removal order

---

Decision of an Immigration Judge, Factual Basis for Appeal"). He also admits that upon his release, he did not appear on October 10, but returned to his home in New Jersey; in mitigation, he proffers that he did provide his home address in New Jersey to immigration officials. *Id.* Nonetheless, Tasci maintains that he never received a Notice of Hearing. *Id.* According to the Order of the Immigration Judge denying Tasci's second motion to reopen, the *in absentia* removal order was first issued on May 25, 2004, because Tasci failed to appear at his hearing on October 10, 2003, and failed to appeal within 180 days. *See* File Review Response at 45-47 ("Order of the Immigration Judge, March 4, 2013"). On March 7, 2005, Tasci filed a motion to reopen which was denied on the grounds that a Notice of Hearing was sent by regular mail to Tasci's home in New Jersey. *Id.* Tasci did not appeal the denial to reopen. *Id.* Tasci filed a second motion to reopen nearly eight years later which was denied on March 4, 2013. *Id.* Tasci has filed an appeal with the BIA which remains pending. *See* File Review Response at 39-44.

[3]  At oral argument, Counsel for the Government explained that a File Custody Review is stipulated by regulation to prevent the indefinite detention of an alien who cannot be removed. Counsel maintained that the Review did not take place because Tasci *could be* and *should have been* removed and therefore there was no threat of indefinite detention.

on March 27, 2013, before the Review was to take place. *See* Tasci Brief at 1. On March 28, 2013, Tasci submitted a Response to the Notice addressing each of the listed factors, *see* File Review Response, and filed an I-246 Application for a Stay of Deportation or Removal pursuant to 8 C.F.R. § 241.4(e). *See* Ex. B to Tasci Brief.

Third, Tasci's Counsel submitted on his behalf a letter to the ICE Deportation Officer attaching a Memorandum issued by John Morton, Director of USCIS, on March 2, 2011, regarding "Priorities for the Apprehension, Detention, and Removal of Aliens," ("Morton Memo"). *See* Ex. C to Tasci Brief. The Morton Memo cites ICE's limited resources and states that ICE is able to remove "less than 4% of the estimated illegal alien population in the United States . . . ICE must prioritize the use of its enforcement personnel, detention space, and removal resources to ensure that the removals the agency does conduct promote the agency's highest enforcement policies, namely national security, public safety, and border security." *Id.* The Memo then lays out a list of factors that "*shall* constitute ICE's civil enforcement priorities, with the first being the highest priority and the second and third constituting equal, but lower priorities . . . ." *See Id.* § A. Priority 1 are "Aliens who pose a danger to national security or a risk to public safety"; Priority 2 are "Recent illegal entrants"; and Priority 3 are "Aliens who are fugitives or otherwise obstruct immigration controls." *Id.* § A. The Morton Memo also instructs that, "Absent extraordinary circumstances or the requirements of mandatory detention, field office directors should not expend detention resources on aliens who are

5

known to be suffering from serious physical or mental illness, or who are disabled, elderly, pregnant or nursing, or demonstrate that they are primary caretakers of children or an infirm person, or whose detention is otherwise not in the public interest." *Id.* § C. However, the Memo makes clear that neither the listed "priorities," nor any other provision of the Memo "should be construed to prohibit or discourage the apprehension, detention, or removal of other aliens unlawfully in the United States." *Id.* § B. In other words, the Memo cannot be interpreted as prohibiting the enforcement of a removal order even where an individual subject to removal does not meet one of the listed "priorities."

In both his File Review Response and Letter in support of his Stay Application, Tasci stresses that he has no criminal record, that he has a U.S.-citizen child whom he has "consistently supported," and that he is expecting another child with his current girlfriend whom he also supports. *See* Tasci Brief at 2.

Tasci submits that he "does not challenge his removal order [or] the discretionary decision made by USCIS, although dissatisfied by the decision." Tasci Brief at 2-3. Rather, Tasci maintains that his claim before this Court "challenges USICE's failure to abide by their very own regulations and policies (Morton Memorandum, 8 C.F.R. Section 241.4(e), File Review and Stay factors) in arriving at their conclusion." *Id.* at 3.

## II. LEGAL STANDARD

Section 1252(g), as amended by the REAL ID Act, Pub L. No. 109-13, 119 Stat. 231 (2005), explicitly bars judicial review by district courts of three classes of actions and decisions committed to the Government's discretion: "the 'decision or action to commence proceedings, adjudicate cases, or execute removal orders.'" *Chehazeh v. Attorney General*, 666 F.3d 118, 134 (3d Cir. 2012) (quoting *Reno v. American Anti-Arab Discrimination Committee*, 525 U.S. 471, 482, 119 S. Ct. 936, 142 L.Ed.2d 940 (1999). Specifically, Section 1252(g), entitled "Exclusive jurisdiction," provides that:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 [pertaining to district court jurisdiction over mandamus actions] and 1651 [pertaining to authority of district courts to issue writs] of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

8 U.S.C. § 1252(g).

Section 1252(g) was "directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *Reno*, 525 U.S. at 485 n. 9. Third Circuit precedent makes it clear that "§ 1252(g) was designed to make unreviewable prosecutorial decisions." *Chehazeh*, 666 F.3d at 135. Thus, if the decision to deny Tasci's application for a stay of removal is properly characterized as an exercise of prosecutorial discretion regarding the execution of a removal order, then Section 1252(g) precludes this court from reviewing the decision.

7

## III. DISCUSSION

Tasci offers practically no argument as to why Section 1252(g) does not bar jurisdiction in this case. He implicitly acknowledges that he is prohibited from directly challenging the removal order in this Court by denying that he is challenging the removal order or the denial of an administrative stay. *See* Tasci Brief at 2-3 ("Tasci does not challenge his removal order nor the discretionary decision made by USCIS, although dissatisfied by the decision."). Instead, Tasci attempts to frame his petition as a challenge to USCIS's reasoning, or lack thereof, in deciding to execute his removal order.

The gravamen of Tasci's argument is that he should not be a priority for removal because he does not fall into the Morton Memo's top-priority categories for removal. Tasci argues that, according to the policy guidelines encapsulated in the Memo and the "File Custody Review" factors, the USCIS "should not expend detention resources" on him because he is, or will soon become, a "primary caretaker of children," *see* Morton Memo § C, and he has no criminal record. *See* Tasci Brief at 2. In other words, Tasci argues that he has been improperly positioned in the deportation line and that his request for an administrative Stay of Removal was denied without consideration of any of the positive factors he has proffered (that he has USC children and no criminal record). In support of his conclusion that the USCIS failed to consider these positive factors, Tasci cites the following passage from the decision of the Field Office Director denying the request for an administrative stay:

> Granting a stay of deportation or removal is reserved
> for a select group of cases whose circumstances reflect

8

> compelling humanitarian factors <u>and</u>, when
> considered with the mission of the agency, warrant
> such extraordinary action. The immigration history of
> this case, when balanced against the positive factors
> you raise and the agency's goals, do not warrant the
> positive exercise of discretion in this matter.

I-246 Denial.

This passage does not support Tasci's position. The Decision clearly states that "the positive factors you raise," in light of "the immigration history of this case" (presumably Tasci's failures to appear, move to reopen or appeal decisions in a timely fashion) and "the agency's goals, do not warrant the positive exercise of discretion in this matter." Simply put, the positive factors cited by Tasci were considered; they were simply insufficient to persuade the ICE to forgo removal proceedings.

I fail to find in Tasci's submission any credible distinction between the denial of a stay and the ICE's decision to execute his removal order within a specific timeframe. Regardless of the terminology—denial of a stay or removal, or execution of removal—this action falls squarely within Section 1252(g)'s mandate that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to . . . execute removal orders against any alien under this Act." 8 U.S.C. § 1252(g).

Regardless of whether I agree with the decision to deny Tasci's request for a stay, I do not have jurisdiction to exercise my judgment in this matter. The denial of a stay is an unreviewable discretionary decision "to ... execute removal orders." 8 U.S.C. § 1252(g). And even without the "jurisdiction-

stripping" provisions of Section 1252, I would lack jurisdiction to review the stay. The scope of federal habeas review under § 2241 is limited to "questions of constitutional and statutory law." *Bakhtriger v. Elwood*, 360 F.3d 414, 424 (3d Cir. 2004) (*Bakhtriger* was superseded on other grounds by statute, REAL ID Act of 2005, Pub.L. No. 109-13, 119 Stat. 23, as recognized in *Kamara v. Attorney General*, 420 F.3d 202 (3d Cir. 2005).) Thus my habeas jurisdiction would not extend to the review of discretionary decisions like the denial of a stay of an order of removal.

Finally, Tasci submits that "USICE's failure to follow its own promulgated regulations can also be reviewed under the Administrative Procedure Act (APA)." Tasci Brief at 4. The APA provides: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C.A. § 702 (West). *See Heckler v. Chaney,* 470 U.S. 821, 828 (1985) ("The APA's comprehensive provisions for judicial review of "agency actions," are contained in 5 U.S.C. §§ 701-706. Any person "adversely affected or aggrieved" by agency action; see § 702, including a "failure to act," is entitled to "judicial review thereof"). However, as the Supreme Court explained in *Heckler*, "before any review at all may be had, a party invoking APA review must first clear the hurdle of § 701(a). That section provides that the chapter on judicial review "applies, according to the provisions thereof, except to the extent that (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." *Id; see* 5 U.S.C. § 701(a). Accordingly, if some other statute

strips this court of jurisdiction, the APA's judicial review provision does not apply. As established above, such is the case here; 8 U.S.C. § 1252(g) is a "statute[ that] preclude[s] judicial review."[4]

## IV. CONCLUSION

For the foregoing reasons, the Court lacks jurisdiction over this action and it must be dismissed. An appropriate order will be filed.

KEVIN MCNULTY
United States District Judge

Date: May 14, 2013

---

[4] It is perhaps an open question as to whether the established agency policy articulated by the Morton Memo constitutes "law to apply" such that a determination would not be a purely discretionary one, and therefore unreviewable under §701(a)(2). See Heckler, 470 U.S. at 830 ("even where Congress has not affirmatively precluded review, [§ 701(a)(2) forecloses review] if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. In such a case, the statute ("law") can be taken to have "committed" the decisionmaking to the agency's judgment absolutely."); Alcaraz v. INS, 384 F.3d 1150, 1161 (9th Cir. 2004) (finding that "established agency policies" can provide "a meaningful standard against which to assess the agency's actions," as required for judicial review under the APA.). I need not reach the issue. As long as review is precluded by 8 U.S.C. 1252(g) and therefore under § 702(a)(1), it is immaterial whether § 702(a)(2) would also preclude review.

11